**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 95-60287**

---

**GEORGE MCINTYRE,**

**Plaintiff-Appellant,**

**VERSUS**

**FARRELL CORPORATION,**

**Defendant-Appellee.**

---

Appeal from the United States District Court
for the Southern District of Mississippi

---

October 7, 1996

Before POLITZ, Chief Judge, DeMOSS, and DENNIS, Circuit Judges.

PER CURIAM:

The Mississippi Supreme Court answered our certified question concerning the interpretation of Mississippi's statute of repose. MISS. CODE ANN. § 15-1-41 (1972). Because the Mississippi Supreme Court's answer tells us that the statute of repose does not apply in this products liability action, we reverse the district court's grant of summary judgment in favor of the manufacturer and remand this case for trial.

**BACKGROUND**

George McIntyre appeals from summary judgment granted in favor of the defendant, Farrel Corporation.[1]  This products liability action is governed solely by Mississippi law.  McIntyre challenges the district court's summary judgment determination that his claims are barred by Mississippi's statute of repose because the industrial machine responsible for injury was a permanent "improvement to real property."  MISS. CODE ANN. § 15-1-41 (1972). Because the disposition of this case involved unsettled issues of Mississippi law, we certified questions regarding the applicability of § 15-1-41 to the Mississippi Supreme Court.

The parties submitted the following agreed statement of facts relevant to this dispute.

1.   The plaintiff-appellant, George McIntyre, was injured on January 27, 1993, when he caught his left hand between two in-running rolls of a four-roll L-calender, in the course of his employment at the Fidelity Tire Manufacturing Company plant in Natchez, Mississippi.

2.   A "calender" is defined by the 1949 edition of the American Standard Safety Code for Mills and Calenders in the Rubber Industry as "a machine equipped with two or more heavy internally heated or cooled rolls revolving in opposite directions and used for continuously sheeting or plying up rubber compounds and for frictioning or coating fabric with rubber compounds."  The original

---

[1]  The face of the record designates the defendant as the "Farrell Corporation."  The correct spelling is the "Farrel Corporation."

version of that Code had been adopted by the American Engineering Standards Committee in 1927. See Safety Code for Rubber Mills and Calenders, ASA B28a-1927. Calenders come in many sizes and configurations. Although such machines are used for various purposes, they are widely used in the tire manufacturing industry to make the various plies that go into the construction of a tire.

3. Farrel's predecessors were pioneers in the development of calenders, manufacturing them for use in both the rubber and plastics manufacturing industries. Farrel engineer John Hinchcliffe testified that Farrel calenders were not mass-produced, but rather were custom-designed and manufactured for each individual purchaser. According to Hinchcliffe, there were no standard models of Farrel calenders; rather, separate engineering drawings were made for each machine.

4. The subject calender was manufactured by Farrel-Birmingham, Inc.,[2] and sold to the original owner and operator of the Natchez plant, Armstrong Tire and Rubber Company, in 1938. The calender was installed and put into use when the Natchez plant opened in 1939.

5. The calender weighs in excess of 100 tons. It was fully assembled at Farrel-Birmingham's Ansonia, Connecticut, facility

---

[2] Farrel-Birmingham, Inc. was subsequently acquired by Emhart Industries, Inc. ("Emhart"), becoming the Farrel Division of that corporation. Emhart is defending this action against Farrel Corporation pursuant to the terms of the 1986 purchase and sale agreement under which Farrel Corporation acquired the assets of the Farrel Division. Emhart retained all liabilities arising out of the sale and manufacture of Farrel products prior to the 1986 closing date.

before being disassembled, shipped in pieces by freight car and installed at the Natchez plant.

6.   The calender has its own separate foundation, an engineering drawing for which was provided by Farrel-Birmingham at the time of sale.  Similar separate foundations are required for mills and other types of dynamic, heavily-loaded equipment, to isolate each such machine's vibrations from those of other plant operations.  The foundation prescribed by the drawing for the subject calender is seven feet, five inches in depth and includes pits underneath the machine to allow for maintenance and cleaning.  The calender is secured to its foundation by bolts ranging from one and one-half to two and one-quarter inches in diameter and from five feet, seven inches to six and one-half feet in length.  The bolts were run through metal plates and nuts which were buried in the foundation, and the machine was then leveled by grouting.  The calender has remained so affixed to its foundation in the same location at the Natchez plant since its original installation in 1939.

7.   The calender is located in the mill room of the plant, where rubber components are mixed, milled, calendered and extruded before being delivered to the tire assembly area.  It is one of a long series of machines used in the tire manufacturing process at the plant.  The machine was originally used as a fabric calender, producing a rubberized sheet of cord used in bias ply tire construction.  The plant's manufacturing process was restructured in 1963, with the subject machine being converted to usage as a gum

4

calender, producing two sheets of rubber which are laminated together downstream from the machine.  Rubber is milled into strips and then transported by a conveyor which drops the rubber onto the calender.  After being laminated, the calendered strips of rubber are moved by conveyor downstream to be cooled and wound up for delivery to the assembly area.  Since 1963, the products of the calender have been inner liners used in tubeless tires and gum strips which reinforce component junctions in both bias ply and radial tires.

8.    Condere Corporation, doing business as Fidelity Tire Manufacturing Company, acquired the Natchez plant from Armstrong in 1987.  When Condere purchased the plant, it took a warranty deed to the real property, and a separate bill of sale for the "equipment" and "fixed assets" located at the facility which, according to the affidavit of Scott Kern, vice-president and secretary of Condere, would have included the subject calender.  Thereafter, in order to facilitate an industrial revenue bond issue, Condere conveyed the property to the City of Natchez, which then leased it back to Condere.  According to Kern, the conveyances to the City of Natchez were made as were those from Armstrong to Condere, with a separate warranty deed and bill of sale.  A single lease agreement between the City of Natchez and Condere covers the site, the building and the leased equipment.  The subject calender appears on the list of leased equipment, and is said to include "associated feed conveyors . . . associated reduction gears and motors, overhead hoist system with monorail and hoist (and) fabric feed section."

5

9.    While the subject L-calender has never been moved since its original installation in 1939, similar machinery has been moved from plant to plant by Condere and other tire manufacturers.  In 1974, Armstrong moved a three-roll calender from the Natchez plant to a new facility in Tennessee.  Armstrong later purchased and installed a four-roll Z-calender in the Natchez plant.  Jerry Beach, Fidelity's plant engineer, testified by deposition that the L-calender could be removed without material damage to the structure of the plant.  Kern's affidavit asserts that there is a market for used calenders in the industry.

## DISCUSSION

We previously determined that the resolution of this appeal required determination of important questions of Mississippi law, for which there were no clear controlling precedents in the decisions of the Mississippi Supreme Court.  *McIntyre v. Farrell Corp.*, No. 95-60287 (5th Cir. Feb. 21, 1996).  We therefore certified the following questions of law to the Supreme Court of Mississippi for instructions:

>    1.    Is a large piece of industrial machinery, such as the Farrel 4-roll calender, used in a factory setting and semi-permanently installed an "improvement to real property" for purposes of § 15-1-41?
>
>    2.    Is an original equipment manufacturer, such as Farrel-Birmingham, Inc. and its corporate successors, that designs, manufactures, and ships a completed piece of industrial machinery an entity that performs or furnishes the "design, planning, supervision of construction, or construction" of an

improvement to real property for purpose of § 15-1-41?

The Mississippi Supreme Court answered the first question stating that "a 'large piece of industrial machinery' *may* constitute an 'improvement to real property' under Mississippi case law, subject to a major caveat expressed in the answer to the second certified question." *McIntyre v. Farrell Corp.*, 1996 WL 529544, *3 (Miss. Sept. 19, 1996)(emphasis in original). The Mississippi Supreme Court then made clear that the controlling issue in this case was the second certified question and held that:

> [A]n original equipment manufacturer that designs, manufactures, and ships a completed piece of industrial machinery is not an entity that performs or furnishes the "design, planning, supervision of construction, or construction" of an improvement to real property for purposes of § 15-1-41.

*McIntyre*, 1996 WL 529544, *10.

Applying the answer to the second certified question to the agreed facts of this case, we hold that Farrel is not entitled to the benefits of § 15-1-41.

## CONCLUSION

Because Farrel is not an entity entitled to protection under § 15-1-41, the district court erred in granting summary judgment. Therefore, the judgment of the district court is **REVERSED** and the case **REMANDED** for trial.